Ex. 3

## AMERICAN ARBITRATION ASSOCIATION

VERONICA DAVIS,

    Claimant,

v.                                         AAA CASE NO.:

CONN APPLIANCES, INC.,

    Respondent.

_____/

## COMPLAINT

Claimant, Veronica Davis (hereinafter "Claimant"), by and through the undersigned counsel, sues Respondent, Conn Appliances, Inc. (hereinafter "Respondent"), and in support thereof respectfully alleges violations of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Respondent from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.	According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet:  Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.	For purposes of this action, jurisdiction and venue are appropriate and conferred by an agreement of the parties to arbitrate.

6.	Venue is proper in this District as Claimant resides within this District, in Shelby County, Tennessee, the violations described in this Complaint occurred in this District and Respondent transacts business within this District.

## FACTUAL ALLEGATIONS

7.	Claimant is a natural person and citizen of the State of Tennessee, residing in Shelby County, Tennessee.

8.	Claimant is the "called party."  *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

9.	Respondent is a corporation responsible for attempting to collect an alleged consumer debt from Claimant.

10.	Respondent is a corporate entity with its principal place of business located at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381, has a registered agent, C T Corporation System, located in Tennessee at 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929, and which conducts business within the State of Tennessee.

11. Claimant is the subscriber, regular user and carrier of the cellular telephone number at issue in this action, (901) XXX-5752 (hereinafter "cellular telephone"), and was the called party and recipient of Respondent's hereinafter described calls.

12. Respondent intentionally, knowingly and/or willfully harassed and abused Claimant on numerous occasions by calling Claimant's cellular telephone, within the last four years, with such frequency as can reasonably be expected to harass and in effort to collect upon an alleged debt.

13. Respondent's calls to Claimant continued, on average, five times per day.

14. Upon information and belief, some or all of the calls Respondent placed to Claimant's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

15. Furthermore, each of the calls at issue were placed by Respondent using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16. Within the last four years, Respondent began bombarding Claimant's cellular telephone in attempt to collect an alleged debt.

17. Upon receipt of the calls, Claimant's caller identification feature identified the calls were being initiated from, but not limited to, the phone numbers 901-203-4121, 901-203-4124, 901-203-4125, 901-203-4126, 901-203-4127, 901-203-4128, and 901-203-4129.

18. On several occasions over the last four (4) years, going back to at least 2013, Claimant instructed Respondent's agents to stop calling her cellular telephone.

19.     Upon Claimant's receipt of one such call from Respondent, in or about October 2015, Claimant answered the call, received Respondent's artificial or prerecorded message, held on the line to be connected to a live agent/representative and informed said agent/representative to immediately cease all calls to her cellular telephone; furthermore, Claimant informed Respondent's aforementioned agent/representative that its incessant calls were harassing her and demanded Respondent immediately cease all calls to her cellular telephone; thereby, unequivocally revoking any previously perceived expressed consent to be called using Respondent's Autodialer, predictive dialer, artificial voice or prerecorded message.

20.     During the aforementioned phone conversation with Respondent's agent/representative, Claimant explicitly revoked any previously perceived expressed consent Respondent may have believed it had for placement of telephone calls to Claimant's cellular telephone by the use of an Autodialer or artificial voice or prerecorded message.

21.     Each subsequent call Respondent placed to Claimant's cellular telephone was done so after she revoked consent and without the express consent of Claimant.

22.     Each subsequent call Respondent placed to Claimant's cellular telephone was knowingly and willfully placed to her cellular telephone without express consent.

23.     On multiple occasions, Claimant informed Respondent to immediately cease calling her cellular telephone; however, despite these attempts, Respondent's calls to Claimant's cellular telephone continued.

24.     Respondent called Claimant on her cellular telephone in excess of eight hundred fifty (850) times since 2013 in attempt to collect an alleged debt.

25.     Due to the extreme volume of calls Claimant received, Claimant was unable to maintain a fully contemporaneous call log of each and every call she received from Respondent;

however, the following is a sample of calls Claimant received from April 6, 2017 through April 14, 2017:

      i. April 6, 2017 at 10:52 a.m.;

      ii. April 6, 2017 at 2:11 p.m.;

      iii. April 6, 2017 at 4:42 p.m.;

      iv. April 6, 2017 at 6:11 p.m.;

      v. April 6, 2017 at 8:29 p.m.;

      vi. April 7, 2017 at 8:15 a.m.;

      vii. April 7, 2017 at 12:44 p.m.;

      viii. April 7, 2017 at 2:23 p.m.;

      ix. April 7, 2017 at 3:20 p.m.;

      x. April 7, 2017 at 4:02 p.m.;

      xi. April 7, 2017 at 5:53 p.m.;

      xii. April 8, 2017 at 8:17 a.m.;

      xiii. April 8, 2017 at 10:43 a.m.;

      xiv. April 8, 2017 at 1:11 p.m.;

      xv. April 8, 2017 at 3:00 p.m.;

      xvi. April 9, 2017 at 10:26 a.m.;

      xvii. April 9, 2017 at 2:34 p.m.;

      xviii. April 10, 2017 at 9:37 a.m.;

      xix. April 10, 2017 at 9:55 a.m.;

      xx. April 10, 2017 at 11:48 p.m.;

      xxi. April 10, 2017 at 12:46 p.m.;

xxii. April 10, 2017 at 2:15 p.m.;

xxiii. April 10, 2017 at 2:39 p.m.;

xxiv. April 10, 2017 at 5:36 p.m.;

xxv. April 10, 2017 at 8:38 p.m.;

xxvi. April 11, 2017 at 9:07 a.m.;

xxvii. April 11, 2017 at 9:20 a.m.;

xxviii. April 11, 2017 at 9:49 p.m.;

xxix. April 11, 2017 at 11:28 p.m.;

xxx. April 11, 2017 at 1:34 p.m.;

xxxi. April 11, 2017 at 2:06 p.m.;

xxxii. April 11, 2017 at 4:22 p.m.;

xxxiii. April 11, 2017 at 5:43 p.m.;

xxxiv. April 11, 2017 at 6:45 p.m.;

xxxv. April 11, 2017 at 8:42 p.m.;

xxxvi. April 12, 2017 at 8:50 a.m.;

xxxvii. April 12, 2017 at 9:28 a.m.;

xxxviii. April 12, 2017 at 11:02 a.m.;

xxxix. April 12, 2017 at 12:10 p.m.;

xl. April 12, 2017 at 1:59 p.m.;

xli. April 12, 2017 at 3:59 p.m.;

xlii. April 12, 2017 at 5:08 p.m.;

xliii. April 13, 2017 at 9:44 a.m.;

xliv. April 13, 2017 at 10:02 a.m.;

      xlv.  April 13, 2017 at 10:10 a.m.;

      xlvi.  April 13, 2017 at 12:17 p.m.;

      xlvii.  April 13, 2017 at 2:04 p.m.;

      xlviii.  April 13, 2017 at 2:41 p.m.;

      xlix.  April 13, 2017 at 3:44 p.m.;

      l.  April 13, 2017 at 8:10 p.m.; and

      li.  April 14, 2017 at 8:39 a.m.

26.     Respondent has, or should be in possession and/or control of, call logs, account notes, Autodialer reports and/or other records that detail the exact number of calls it placed to Claimant.

27.     Despite actual knowledge of its wrongdoing, Respondent continued its campaign of abuse by continuing to call Claimant despite not having Claimant's express consent to call her cellular telephone.

28.     Respondent has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Claimant's cellular telephone in this case, with no way for the called party and recipient of the calls, including Respondent, to permit, elect, or invoke the removal of Claimant's cellular number from Respondent's call list.

29.     The structure of Respondent's corporate policies and procedures permits the continuation of calls to individuals like Claimant, despite these individuals revoking any consent, or perceived consent, Respondent may have believed it had to place such calls.

30. Respondent's corporate policies and procedures provided no means for Claimant to have her cellular number removed from Respondent's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Claimant from Respondent.

31. Respondent has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Claimant, for its financial benefit.

32. Respondent has had numerous complaints from consumers across the country against it asking to not be called; however, Respondent continues to call consumers.

33. Respondent has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

34. Respondent has numerous complaints against it, across the country, asserting that its Autodialer continues to call individuals who have revoked consent to be called by Respondent.

35. Respondent knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Claimant.

36. Respondent knowingly employs methods that do not permit the cessation or suppression of autodialed calls to Claimant's cellular telephone.

37. None of Respondent's telephone calls placed to Claimant were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious."

39. For each call Respondent placed to Claimant's cellular telephone without express consent, Claimant suffered from the occupation of her cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

40. For each call Respondent placed to Claimant's cellular telephone without express consent, Claimant suffered from unnecessary expenditure of her time. The time Claimant spent on answered calls was unnecessary because she repeatedly asked for calls to stop. Additionally, Claimant expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Claimant's cellular telephone, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by Respondent to Claimant's cell phone was an injury in the form of a nuisance and annoyance to the Claimant.

42. Each and every call Respondent placed to Claimant's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Claimant's cellular telephone's battery power.

43. Each and every call Respondent placed to Claimant's cellular telephone without express consent resulted in the injury of trespass to Claimant's chattel, namely her cellular telephone and cellular telephone services.

44. As a result of aforementioned tenacious phone calls and collection efforts, Claimant was affected, both personally and individually, as she experienced an invasion of privacy and the intrusion upon her right of seclusion. Claimant also suffered from stress, intimidation, headaches, diabetic flare-ups, and the phone calls aggravated an existing illness.

Additionally, Claimant experienced loss of happiness, concentration and privacy. Furthermore, Claimant was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of her cell phone. All of the abovementioned were caused by, and/or directly related to, Respondent's attempts to collect a consumer debt allegedly owed by Claimant.

## COUNT I
### (Violation of the TCPA)

45. Claimant incorporates and realleges paragraphs one (1) through forty-four (44) as if fully set forth herein.

46. Respondent willfully violated the TCPA with respect to Claimant, especially for each of the Autodialer calls it made to Claimant's cellular telephone after Claimant notified and requested Respondent that he wished for the calls to immediately cease.

47. Respondent repeatedly placed non-emergency telephone calls to Claimant's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Claimant's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Claimant respectfully demands a hearing on all issues so triable and judgment against Respondent for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Arbitrator may deem just and proper.

Respectfully submitted,

_____
Jared M. Lee, Esquire
Florida Bar No #: 0052284
Morgan & Morgan, Tampa P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Tele: (407) 420-1414
Fax: (407) 245-3485
JLee@ForThePeople.com
MRathbun@ForThePeople.com
*Counsel for Claimant*

Frank H. Kerney, III, Esquire
BPR #: 035859
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
fkerney@forthepeople.com
*Counsel for Claimant*