Ex. 5

## AMERICAN ARBITRATION ASSOCIATION
## CONSUMER ARBITRATION PROCESS

VERONICA DAVIS,

          Claimant,

                                        CASE NO.: 01-17-006-8007

-VS-

CONN APPLIANCES, INC.,

          Respondent.

_____

### RESPONDENT CONN APPLIANCES, INC.'S ARBITRATION BRIEF

Respondent Conn Appliances, Inc. ("Conn's" and "Conn Appliances") hereby respectfully submits its Prehearing Brief.

### I.    INTRODUCTION

The Telephone Consumer Protection Act of 1991 ("TCPA") was enacted to prevent random-dialed telemarketing calls that were considered the "scourge of modern civilization."[1] To assure that the practice of using random or sequential number generators to call large groups of people would cease, Congress affixed a huge penalty—at least $500.00 per call—to dissuade this practice.

Congress, of course, did not intend for legitimate businesses to be penalized for leveraging modern technology to accurately and efficiently contact their consumers. The statute was specifically designed to only punish *random*-fire telemarketers, not businesses contacting their existing customers, for legitimate reasons, to discuss, *inter alia*, payment arrangements. Indeed, the legislative history specifically notes that: "[t]he Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers. For example, a … **creditor would not be prohibited from using an automatic dialer** recorded message player **to advise a customer (at the telephone number provided by**

---

[1] 137 Cong. Rec. 30821-30822 (1991).

**the customer) that … a bill had not been paid.**") See  H.R. REP. No. 102-317, at 17 (1991) (Emphasis added.)  That's pretty clear.

Clearer still is the statute's language. The TCPA *is* a very narrowly drafted statute. By its own express definitions—carefully and separately considered by the statute's drafters—the TCPA only applies to automated telephone dialing systems ("ATDS") that have the capacity to use a random or sequential number generator to produce numbers to be dialed. 47 U.S.C. § 227(a)(1). By adopting such a narrow definition Congress plainly sought to punish and deter "robocallers" using random-fire dialers but allow the vast majority of businesses to contact their customers for legitimate business purposes.

Conn's does not now, and never has, used such a random-fire robodialer. Indeed, numerous arbitrators have already found that Conn's does not use an ATDS governed by the TCPA. See *Michael Eugene Smith v. Conn Appliances, Inc.*, AAA Case No. 17-0006-1755 (Jan. 28, 2019)(judgment to Conn's finding that it did not use a dialer capable of random or sequential number generation); *Cynthia Brooks v. Conn Appliances, Inc.,* AAA Case No. 18-0000-3225 (Jan. 11, 2019 Order)(Wise)(judgment granted to Conn's because the calls made by the Respondent (as creditor) to the Claimant (as debtor) were…clearly not the result of 'random' dialing by the Respondent nor the result of mere sequential number generation"); *Sean Grace v. Conn Appliances, Inc.*, AAA Case No. 17-0003-2083 (Dec. 18, 2018 Order)(judgment granted to Conn's on ATDS issue because Conn's telephone system lacks the capacity to randomly or sequentially generate numbers to be dialed); *Raul Vargas v. Conn Appliances, Inc.*, AAA Case No. 17-0000-4085 (Dec. 5, 2018 Order) (judgment granted to Conn's because telephone system did not randomly generate numbers.) *Mary Elizabeth Miller v. Conn Appliances, Inc.*, AAA Case No. 17-005-1680 (Sept. 10, 2018 Order)(judgment granted to Conn's on ATDS issue because Conn's telephone system did not randomly generate numbers);  *Steven Edwards v. Conn Appliances, Inc.*, AAA Case No. 15-0003-8472 (June 28, 2016 Order)(final arbitrator award after evidentiary hearing concluding that Conn's did not use an ATDS).

So why is Claimant's counsel pursuing this case? Unfortunately, the TCPA has been weaponized by consumer lawyers that seek to drive large-dollar settlements in legally meritless cases, just like this one. This is a numbers game. Even if counsel lose the majority of their cases before courts and arbitrators that properly apply the statute, they know that some confusion as to the proper application of the law remains. Given the huge damages sought in these cases, they only need to win a handful to turn a tidy profit on their entire portfolio.[2] It is an unfortunate practice but many companies will roll over and play dead in these suits, offering up settlements in a meritless case to avoid the expense of trial.

Not Conn's.

It is true that back in 2003 the Federal Communications Commission ("FCC") interpreted the definition of ATDS in a new and strained manner inconsistent with the statute's plain language.[3] But that ruling has been overturned. The FCC issued later iterations of its strained ATDS interpretation in 2008,[4] 2012,[5] and 2015,[6] with each version changing slightly and—as the D.C. Circuit Court of Appeal found last year—the FCC's orders eventually became internally inconsistent and unworkable.[7]

In March of 2018, therefore, the D.C. Circuit Court of Appeal addressed the FCC's ATDS rulings and issued a striking condemnation of the FCC's entire ATDS approach. As numerous district courts have now confirmed, the FCC's earlier rulings are defunct and overturned. See e.g.

---

[2] Conn's does not hide that Morgan & Morgan have won a recent arbitration against Conn's in this jurisdiction—*Johnnie Williams v. Conn's.* That award has not been confirmed, however, and—since the erroneous conclusion that Conn's used an "ATDS" was unsupported by any specific factual findings in that case—the ruling is currently being challenged in the Southern District of Texas.

[3] See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14,014, 14,093 (2003). ("2003 FCC Order").

[4] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008). ("2008 FCC Order").

[5] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012). ("2012 FCC Order").

[6] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015). ("2015 FCC Order").

[7] *ACA International v. Federal Communications Commission*, 885 F.3d 687, 702-703 (D.C. Cir. 2018)(*ACA Int'l*), ("So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers).")

*Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 938 (N.D. Ill. 2018)("*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them"); *Marks v Crunch San Diego, LLC,* 904 F.3d 1041, 1049 (9th Cir. 2018)(" Because the D.C. Circuit exercised its authority to set aside the FCC's interpretations of the definition of an ATDS in the 2015 order and any prior FCC rules that were reinstated by the 2015 order, we conclude that the FCC's prior orders on that issue are no longer binding on us.")(Internal Citations Omitted.) So the FCC's entire framework regarding "predictive dialers"—a vague phrase that the arbitrator will hear often mentioned by Claimant's counsel even though the words do not appear in the TCPA—has been overruled and is inapplicable in this arbitration.

With the FCC's inconsistent rulings struck down, that leaves Claimant with just the statutory language of the TCPA— requiring random or sequential number generation—on which to base her claim. Not surprisingly, the vast majority of courts looking at a statutory definition requiring random or sequential number generation as the hallmark of ATDS usage have required random or sequential number generation as the hallmark of ATDS usage. See Section III.C. below.

Conn's does not hide that one Circuit Court of Appeal—the Ninth Circuit—has taken a rather extreme approach to interpreting the TCPA. Rather than read the statute for what it says, the Ninth Circuit has essentially re-written the statute to include all dialers that "store" numbers to be called. *Marks,* 904 F.3d at 1053.

The Ninth Circuit went too far in re-writing the TCPA and the arbitrator should not follow its strained, results-driven analysis. The statute says what it says and cannot be re-written to suit Ms. Davis. The Arbitrator should see past the unlikely—some would say manufactured—confusion over the plain meaning of the express definition of ATDS and join the chorus of other arbitrators granting judgment to Conn's on this issue.

As shown below, however, even if Conn's did use an ATDS—and it did not—Conn's had the requisite consent to make the challenged calls under the TCPA anyway.

For these reasons, and others, Conn's respectfully requests an award in its favor at the conclusion of the evidentiary hearing in this matter.

## II.    FACTUAL BACKGROUND

### A.    Claimant and Conn Appliances' Contractual Relationship

On October 5, 2015, Claimant purchased a sofa and a love seat from Conn Appliances.

Claimant financed this purchase and agreed to pay Conn's the $1,539.97 owed for the merchandize over 30 monthly payments.

Claimant agreed to make regular monthly payments beginning on September 5, 2015 and on the same day each month.

It will be undisputed that Claimant fell behind on her payment obligations to Conn's. It will also be undisputed that the retail installment contract and security agreement ("RICSA") she signed on October 15, 2015, specifically gives Conn's the right to call her to check on payment status if a payment was untimely.  The RICSA reads, in relevant part:

> CONSENT TO TELEPHONE/TEXT MESSAGE/EMAIL CONTACT: FOR EACH TELEPHONE NUMBER YOU PROVIDE TO SELLER (EITHER DIRECTLY OR BY PLACING A CALL TO US) YOU CONSENT AND AUTHORIZE US TO PLACE TELEPHONE CALLS TO YOU AT THAT NUMBER. SUCH CONSENT EXPRESSLY INCLUDES AUTHORIZATION FOR SELLER (AND/OR OUR AFFILIATES AND/OR AGENTS) TO SEND TEXT MESSAGES AND/OR PLACE TELEPHONE CALLS TO CELLULAR OR LANDLINE TELEPHONE NUMBERS USING PRE-RECORDED OR ARTIFICIAL VOICE MESSAGES, AS WELL AS CALLS MADE BY AN AUTOMATIC DIALING SYSTEM.

In filling out the RISCA, Claimant specifically provided her cell phone number-- (901) 489-5752—which is the same number at issue in this case.

Conn's called Claimant on the number she provided in the RISCA, about the account created by the RISCA, just as the RISCA allows and contemplates. Nonetheless, she now sues Conn's for those phone calls.

**B. Conn Appliances' Telephone System**

Conn Appliances did not make random-fired "robocalls" to Claimant. That is not the way Conn's conducts its business.

Instead, the following facts are crystal clear and dispositive:

1. Conn Appliances' phone system does not randomly or sequentially generate numbers to call people and does not have the ability to do that;

2. Claimant was never called randomly or sequentially; and

3. Conn Appliances did not call Claimant on any occasion without a *human being* available to talk to Claimant at the time the call was made.

As the evidence at the hearing will demonstrate, *human* individuals are involved in making every call Conn's attempts, including reviewing what accounts have become delinquent, determining what customers to call and loading the telephone number(s) into the system prior to the call. Unlike dialers which rely on sophisticated software to decide when to make calls, Conn's uses *human beings* to plan, schedule and continuously monitor its calling efforts and to manage live call center agents during each call campaign. And it always had a human being available to talk to Claimant as a result.

**III. CONN'S DID NOT USE AN ATDS TO CALL THE CLAIMANT**

**A. The TCPA is a Clearly-Worded Statute Serving a Clear and Limited Purpose**

Calls are not actionable under the TCPA unless they are made using an ATDS or a pre-recorded voice. 47 U.S.C. §227(b)(1)(A)(making it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system** or an artificial or prerecorded voice…") [8]

---

[8] While the bulk of Claimant's case turns on Conn's purported use of an ATDS, there may be a handful of pre-recorded calls at issue in this case. Conn's does not dispute that any such calls that actually were played to the Plaintiff are governed by the TCPA. *Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015)(pre-recorded message calls that are initiated but do not result in a message not actually being played do not violate the TCPA); Nonetheless it is Claimant's burden to demonstrate that any such calls were actually played. *Morris v. United Healthcare Ins. Co.*, No. 4:15-CV-00638-ALM-CAN, 2016 U.S. Dist. LEXIS 168288, at *18-19 (E.D. Tex. Nov. 8, 2016) (Calls that are not made by artificial/prerecorded voice do not violate the TCPA. Also holding that,

Unlike the vast majority of federal statutes, Congress actually took the time to specifically define the phrase "ATDS" in the TCPA so that there would be no mistake that the statute was limited in reach. The TCPA specifically provides that an ATDS "means equipment which has the capacity . . . to store or produce telephone numbers to be called, **using a random or sequential number generato**r[,] and to dial such numbers."(Emphasis Added). 47 U.S.C. § 227(a)(1).

This language yields a pretty straightforward analysis. If a dialer stores or generates random or sequential numbers and calls those numbers it is an ATDS. If it calls via any other method, it is not an ATDS. Simple as that.

Notably the vast majority of businesses reaching out to customers to collect on a past-due obligation will not use such dialers. So their calls are not subject to the TCPA. This is by design. Again, the legislative history specifically notes that a "**creditor would not be prohibited from using an automatic dialer** recorded message player to advise a customer (at the telephone number provided by the customer) **that … a bill had not been paid.**" See  H.R. REP. No. 102-317, at 17 (1991) (Emphasis added.)

Instead, Congress's prohibition on the use of automatic telephone dialing systems targeted harmful telemarketing practices that emerged in the 1980s.  Then, "telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings."[9]  Random dialing allowed callers to reach and tie up unlisted and specialized numbers.[10]  And sequential dialing allowed callers to reach all numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed.[11]

Without question, therefore, the TCPA was designed to prevent random-fired telemarketing calls and not specifically-targeted payment reminder calls of the sort Conn's placed here.  The statutory language bears this out by outlawing only calls made using equipment with

---

mere speculation that an artificial or prerecorded voice may have played had the consumer answered the calls is insufficient.)  Moreover, as set forth in Section IV, below, Conn's had consent to make those calls anyway.
[9] *Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 372 (3d Cir. 2015).
[10] *See* S. Rep. No. 102-178, at 2 (1991)
[11] H. R. Rep. No. 102-317, at 10 (1991)

the capacity to generate numbers randomly or sequentially, not—for instance—all dialers calling from lists of numbers. 47 U.S.C. § 227(a)(1).

### B.   *ACA Int.'l* Reigned In the FCC's Unreasonable Expansion of the TCPA

Federal agencies like the FCC are given the power to interpret vague statutory phrases but are never allowed to re-write statutes contrary to their express language. *Landstar Exp. America v. Federal Maritime Com'n,* 569 F. 3d 493, 498 (D.C. Cir. 2009)(Kavanuagh) ("federal agencies can[not] rewrite a statute's plain text to correspond to its supposed purposes.")

Unfortunately, in 2003 the FCC began overstepping its authority and interpreting the TCPA—its only weapon against so-called "robocall" complaints[12]— to cover any dialer with the capacity to dial thousands of numbers at a time and without human intervention." 2003 Order, 18 FCC Rcd. 14,014, 14,115 ¶ 165 (2003).  The FCC largely-confirmed its 2003 findings in 2008. In 2015, the expansion of the ATDS took another quantum leap, when the FCC's 2015 Omnibus Order defined an ATDS so broadly that any smartphone could qualify as an ATDS. *ACA Int'l*, 885 F.3d at 696-98 ("[A]ll smartphones, under the Commission's approach, meet the statutory definition of an autodialer.").

In 2018, the D.C. Circuit Court of Appeal—the court specifically empowered under the Hobbs Act to review FCC administrative action[13]— rejected the FCC's "unreasonably expansive" approach to the agency's definition of an ATDS. *See ACA Int'l ,* 885 F.3d at 692.  Moreover, rejecting the FCC's position that it "lacked jurisdiction" to review the FCC's earlier rulings from 2003 and 2008, the D.C. Circuit Court of Appeal found that the FCC's 2003 ruling was inconsistent with its 2015 ruling as to the required functionalities of an ATDS.  *See ACA Int'l*, 885 F.3d at 70

---

[12] Without question the FCC—which is not a consumer protection agency—receives more complaints about robocalls than anything else. While the Commission might be commended for trying to stop robocalls, it is not empowered to do so by re-writing a statute designed to serve a far more limited purpose.

[13] ACA International consolidated several Hobbs Act petitions for review of the 2015 Declaratory Ruling. See *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.), Dkt. 07/24/2015 (consolidating petitions); *Prof'l Assoc. for Customer Engagement, Inc. v. FCC*, No. 15-2489 (7th Cir.), Dkt. 7 (transferring case); see also *Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 797 n.5, 2018 WL 2229131, at *5 n.5 (D. Ariz. May 14, 2018) (summarizing the procedural posture). Thus, "that court became the `sole forum for addressing... the validity of the FCC's rule[].'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.,* 863 F.3d 460, 467 (6th Cir. 2017) (quoting *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)).

(holding that Court was not barred from reviewing the FCC's "pertinent pronouncements" given that the FCC's "prior rulings left significant uncertainty about the precise functions an autodialer must have the capacity to perform.").

The majority of district courts have found that the net result of *ACA Int'l*, is that the FCC's entire framework of ATDS rulings has now been set aside. See *Pinkus* at 938; *Marks* at 1049; *Keyes v. Ocwen Loan Servicing, LLC*, 17-CV-11492, 2018 WL 3914707, at *7 (E.D. Mich. Aug. 16, 2018); *Washington v. Six Continents Hotels*, Case No. 2:16-CV-03719-ODW-JEM, 2018 U.S. Dist. LEXIS 145639 (C.D. Cal. Aug. 24, 2018)(ACA Int'l overturned all previous FCC ATDS formulations); *Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208, 1214 (N.D. Ga. 2018); *Gary v. TrueBlue, Inc.*, 17-CV-10544, 2018 WL 3647046, at *7 (E.D. Mich. Aug. 1, 2018).  That means that a reviewing court must look only to the statutory definition of ATDS in applying the statute. *Ibid.*

### C.  <u>With the FCC's Orders Invalidated Numerous Courts Have Now Confirmed that the Use of a Random and Sequential Number Generator to Dial Numbers is Necessary to Assert a TCPA Claim</u>

Having determined that the FCC's earlier orders are no longer valid, courts across the country have confirmed that the TCPA says what it means—only dialers using random or sequential number generators qualify as an ATDS:

- The Third Circuit held that the plaintiff must prove ATDS by showing that a telephone system generates random or sequential telephone numbers and then dials those numbers.  In reaching this conclusion, the court plainly rejected the now defunct position discussed in  the vacated FCC Orders that an ATDS must only dial from a list:

  "Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service *had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers*. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user." *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 120–21 (3d Cir. 2018).

- The Second Circuit held: "*ACA 'Intl* [..] invalidated [the FCC's 2015 Order] and thereby *removed any deference to the views the FCC expressed in it*.  *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 473 (2d Cir. 2018) (emphasis added).  Based on its understanding of "the plain language of the Act," the Second Circuit held that the term "capacity" referred to in the "TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software."  *Id.* at 481.

- The Northern District of Georgia agreed that all FCC orders were overturned by the D.C. Circuit and noted that "[t]he Supreme Court's instruction 'to give effect, if possible, to every clause and word of a statute,' reinforces [defendant's] reading because 'if the statute meant to only require that an ATDS include any list of database of numbers, it would simply define an ATDS as a system with 'the capacity to store or produce numbers to be called' without mention of a '*generator*.'" *Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208, 1214 (N.D. Ga. 2018) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)).

- The Northern District of Illinois held: "Because the phrase 'using a random or sequential number generator' refers to the kinds of 'telephone numbers to be called' that an ATDS must have the capacity to store or produce, it follows that that phrase is best understood to describe the process by which those numbers are generated in the first place." *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 938 (N.D. Ill. 2018). "So, the phrase '*using a random or sequential number generator*' necessarily conveys that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers." *Id.*

- The Eastern District of Michigan held: "The statute never mentions a capacity to dial from a set list. *Plaintiff does not allege that WorkAlert has the capacity to store or produce numbers using a number generator, and nothing in the record could support such a claim*. Therefore, adhering to the plain language of the TCPA and viewing the facts in the light most favorable to the Defendant, the Court finds that WorkAlert does not qualify as an ATDS as a matter of law." *Gary v. TrueBlue, Inc.*, 17-CV-10544, 2018 WL 3647046, at *7 (E.D. Mich. Aug. 1, 2018).

- The Eastern District of Michigan held: "Ocwen will prevail here on yet another basis: the Aspect System does not possess the functions necessary to be an ATDS. The Aspect System dials from a set list, *but that is not the same as dialing numbers using a random or sequential number generator*." *Keyes v. Ocwen Loan Servicing, LLC*, 17-CV-11492, 2018 WL 3914707, at *7 (E.D. Mich. Aug. 16, 2018).

- The Middle District of Florida held: "Having considered the statute, this Court concludes that the definition of an ATDS would not include a predictive dialer that lacks the capacity to generate random or sequential telephone numbers and dial them; but it would include a predictive dialer that has that capacity. And because the D.C. Circuit determined that interpreting capacity to mean a device with a 'future possibility' of having those functions is too expansive, *this Court considers a device to have the*

*capacity to generate random or sequential telephone numbers only if the device has the 'present ability' to do so*." *Gonzalez v. Ocwen Loan Servicing, LLC*, 5:18-CV-340-OC-30PRL, 2018 WL 4217065, at *6 (M.D. Fla. Sept. 5, 2018).

- The New Jersey District Court held: "Does a system that dials numbers from a list that was not randomly or sequentially generated when the list was created qualify as an ATDS? With only the statutory text to guide me, I am convinced that the answer is no. *The phrase 'using a random or sequential number generator,' I believe, applies to the manner in which the numbers make their way onto the list—not to the manner in which the numbers are dialed once they are on the list . . . .*" *Fleming v. Associated Credit Servs., Inc.*, CV163382KMMAH, 2018 WL 4562460 at * 9 (D.N.J. Sept. 21, 2018).

- The Minnesota District Court held: "[T]here is no question that the devices used by Credit One's agents are predictive dialing systems. However, in the wake of *ACA, Int'l* [which the district court found invalidated the FCC's 2003, 2008 and 2011 Orders], predictive dialing systems are no longer always considered autodialers under the TCPA. *Rather, the correct inquiry is whether a device can generate numbers to dial either randomly or sequentially.*" *Roark v. Credit One Banks, N.A.* Civ. No. 16-173 (PAM/ECW) 2018 WL 5921652 (D. Minn. November 13, 2018).

In reaching this conclusion, the district court specifically considered and rejected as "unpersuasive" the interpretation of the Act set forth in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) upon which Claimant solely relies.

- The Northern District of Illinois held: "The phrase 'using a random or sequential number generator' applies to the numbers to be called and *an ATDS must either store or produce those numbers (and then dial them). Curated lists developed without random or sequential number generation capacity fall outside the statute's scope.*" *Johnson v. Yahoo!, Inc.*, 2018 WL 6426677, at * 2 (N.D. Ill. 2018). In reaching this conclusion, the district court considered and rejected the *Mark's* Court's construction of the ATDS definition because that construction was based on the faulty notion that the statutory definition of ATDS is ambiguous. *Id.*

The district court also found that it was required to apply the plain language of the ATDS definition—as opposed prior FCC Orders construing that definition— because the D.C. Circuit in *ACA 'Intl* vacated all prior FCC pronouncements pertinent to the functions and capabilities necessary for equipment to qualify as an ATDS under the TCPA. *Id.* at *1

- The Eastern District of Pennsylvania held: "A careful parsing of *ACA Int'l* indicates that the invalidation of the 2015 Order necessarily invalidated the 2003 and 2008 Orders as well. *Richardson v. Verde Energy United States*, No. 15-6325, 2018 U.S. Dist. LEXIS 212558, (E.D. Pa. Dec. 14, 2018). The Court went on to find that it was to conclude that the predictive dialer used by defendants did not, as a matter of law, satisfy the statutory definition of ATDS because it could not generate random or sequential numbers. *Id.*

11

- The Northern District of Iowa explained: "The Court finds that the adverbial phrase "using a random or sequential number generator" modifies both "produce" and "store." In other words, the Court finds that a device meets the definition of an ATDS only when it is capable of randomly or sequentially producing, or randomly or sequentially storing, telephone numbers. […]. *Harbach v. USAA Federal Savings Bank*, 2019 WL 149711 at *12 (N.D. IA January 9, 2019).

In reaching this conclusion, the Court considered and rejected the conclusion in *Marks* that "using a random or sequential number generator modifies only "produce," explaining: "Were the phrase "using a random or sequential number generator" understood to refer to how telephone numbers to be called are produced rather than to how they are generated, the phrase would be superfluous, as it would simply encompass the universe of possible permutations in which numbers could be dialed. *Id*. at *13. Further, if 'using a random or sequential number generator' referred to the order in which numbers are dialed and not the process of generating telephone numbers, the phrase would have followed, rather than preceded, "dial such numbers" in section (a)(1)(B). Accordingly, the phrase "using a random or sequential number generator" necessarily conveys that an ATDS must have the capacity to generate or store telephone numbers, either randomly or sequentially, and then to dial those numbers." *Id* (citations omitted).[14]

### D. *Marks* Should Not be Followed Because It Rewrites the Definition of an ATDS Beyond Congressional Intent

There is one outlier.

The Ninth Circuit Court of Appeals' recent decision in *Marks* unabashedly re-writes the TCPA. See *Marks* at 1053. *Marks* should not be followed here as it contradicts both *ACA Int'l* and the Ninth Circuit's own precedent on the definition of an ATDS.

In *Marks*, the Ninth Circuit found the statutory definition of an ATDS ambiguous; a baffling conclusion given that the Ninth Circuit had previously ruled the definition of ATDS is "clear and unambiguous." *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (noting "the statute's clear language" and reading the phrase "to store or produce telephone numbers to be called, using a random or sequential number generator" to mean "store, produce, or call randomly or sequentially generated telephone numbers.").

---

[14] *See also, Herrick v. GoDaddy.com, LLC*, 312 F. Supp. 3d 792, 793 (D. Ariz. 2018); *Marshall v. CBE Grp., Inc.*, No. 2016CV02406GMNNJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018); and *Wash. v. Six Continents Hotels*, Case No. 2:16-CV-03719-ODW-JEM, 2018 U.S. Dist. LEXIS 145639 (C.D. Cal. Aug. 24, 2018).

Nonetheless, the *Marks* court used this new-found "ambiguity" to re-write the TCPA. Disregarding the plain statutory language, *Marks* defined the term "ATDS" to mean equipment that has the capacity to (1) store numbers to be called **or** (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers. *Marks* at 1053.

*Marks* has been visibly criticized by a number of recent district court decisions and for obvious reasons—it re-writes the statute to remove critical language regarding the use of a random or sequential number generator. See *Harbach v. USAA Federal Savings Bank*, 2019 WL 149711 at *12 (N.D. IA January 9, 2019)(rejecting *Marks* as overly broad misapplication of unambiguous statute); *Johnson v. Yahoo!, Inc*., 2018 WL 6426677, at * 2 (N.D. Ill. 2018)(same); *Roark v. Credit One Bank*, N.A. Civ. No. 16-173 (PAM/ECW) 2018 WL 5921652 (D. Minn. November 13, 2018)(same).

Conn's respectfully submits that the arbitrator should apply the statute as written by Congress, not as re-written by the Ninth Circuit Court of Appeal.[15]

### E.   Conn's Did Not Use An ATDS As Its Dialer Lacks the Capacity to Store or Produce Numbers Using a Random or Sequential Number Generator

The evidence will be clear that Conn's did not use equipment with the capacity to randomly or sequentially dial phone numbers. So it did not use an ATDS and it is entitled to judgment in this case. *Dominguez,* 894 F.3d at 120–21.

Even under alternative—incorrect—ATDS formulations Claimant's claim will fail. Conn's does not use a "predictive dialer" (and those words lack legal significance given that the FCC's orders have been overturned) and Claimant will not be able to demonstrate that Conn's dialer "stores" numbers to be called.

As such, Conn's respectfully requests the Arbitrator to award judgment in its favor, just as so many others have done. *Brooks,* AAA Case No. 18-0000-3225 (Jan. 11, 2019 Order)*; Grace,*

---

[15] The Sixth Circuit has not yet weighed in. Nor has any court in Tennessee yet addressed whether predictvie dialers meet the *statutory definition* of an ATDS. But see *Ammons v. Ally Fin. Inc.,* 326 F.Supp. 3d. 578, 588-589 (M.D. Tenn. 2018) (incorrectly concluding that the FCC's 2003 and 2008 Orders remain valid post *ACA Int'l.*)

AAA Case No. 17-0003-2083 (Dec. 18, 2018 Order); *Raul Vargas,* AAA Case No. 17-0000-4085 (Dec. 5, 2018 Order); *Miller,* AAA Case No. 17-005-1680 (Sept. 10, 2018 Order); *Edwards*, AAA Case No. 15-0003-8472 (June 28, 2016 Order).

## IV.   CONN'S HAD CLAIMANT'S CONSENT TO CALL USING AN ATDS ANYWAY

This case is especially bad for Claimant.  Not only did Conn's not use an ATDS to contact her, but it actually had the necessary express consent to do so even if it had.

### A.   Contractual Consent of the Claimant Granted Conn's is Binding in TCPA Cases

The TCPA allows calls to be made using regulated technology with the "express consent" of the called party. 47 U.S.C. §227(b)(1)(A)(iii).

Prior "express consent" may be obtained in two key ways.  First, it is obtained anytime a party provides the number directly to a caller, such as part of a credit application, and the subsequent calls relate to the same subject matter for which the number was provided.  *See e.g., Van Patten*, 847 F.3d at 1044-1045.  For example, the Federal Communications Commission[16] ("FCC") and courts have repeatedly declared that a person expressly consents to being contacted by telephone regarding a debt merely by providing a cell phone number to a creditor.  See *Id.*; FCC's 2008 Order, 23 F.C.C. Rcd. at 563 ("We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.")(Emphasis added); FCC's 2012 Order, 27 F.C.C. Rcd. 1830, 1840 (explaining that the FCC "concluded that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.").

Second, prior express consent may be obtained via an express contractual agreement between the party and the caller.  *See Reyes*, 861 F.3d at 53; *see also ACA Int'l v. FCC*, 885 F.3d

---

[16] The TCPA also authorizes the FCC "to promulgate rules and regulations in order to further implement the act's provisions."  *Reyes*, 861 F.3d 51, 56 (2d Cir. 2017) ; 47 U.S.C. § 227(b)(2).

687, 710 (D.C. Cir. 2018).  In *Reyes*, which is analogous to Claimant's case, the plaintiff consented to be called in his auto lease agreement and provided his cellular telephone number to the defendant during the application process.  When the plaintiff in *Reyes* stopped making payments, the defendant began contacting him using pre-recorded messages.  The plaintiff orally requested that the defendant stopped calling but the calls persisted.

The *Reyes* court found that the following provision in the contract constituted prior express contractual consent and ruled in favor of the defendant:

> You (Reyes) also expressly consent and agree to Lessor (Ford) . . . may use written, electronic or verbal means to contact you.  This consent includes but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems.  You agree that Lessor, Finance Company, Holder . . . may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

*Reyes*, 861 F.3d at 43-54, 57.

Here, like in *Reyes*, Conn Appliances received Claimant's prior express and contractual consent to call him regarding his loan debt in the RICSA because he provided Conn Appliances with the "8784" telephone number. *See Van Patten*, 847 F.3d at 1044-1045; FCC's 2008 Order, 23 F.C.C. Rcd. at 563.

The contract explicitly states that it is a "contract" and the consent-to-be-called provision is the first provision on the "Disclosures and Contract Terms" page.  Therefore, Claimant is contractually bound by the consent clause contained in the contract.  Conn Appliances had the express contractual consent necessary to call the phone number at issue without incurring TCPA liability.  *See Reyes*, 861 F.3d at 57.

## B. Although the Arbitrator Has Found Otherwise, Contractual Consent May Not Be Revoked

A consumer who has consented to receive calls in a written contract cannot unilaterally revoke that consent. See *Reyes*, 861 F.3d at 56("**[i]t is black letter law that one party may not alter a bilateral contract by revoking a term without the consent of a**

15

counterparty")(Emphasis Added); *Medley v. Dish Network,* Case No. 8:16-cv-2534-T-36TBM, 2018 U.S. Dist. LEXIS 144895, *31 (M.D. Fl. Aug. 27, 2018)("**nothing in the TCPA indicates that contractually-granted consent can be unilaterally revoked in contradiction to black-letter law"**)(Emphasis Added); See also *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1274-75 (11th Cir. 2017) and *Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242, 1255 (Each holding that TCPA consent is revocable "**in the absence of any contractual restriction to the contrary**…").(Emphasis Added.) This is true even where the contractual consent provision does not directly address revocation. *Harris v. Navient Solutions,* Case No. 3:15-cv-564 (RNC), 2018 WL 3748155 at *2 (D. Conn. Aug. 7, 2018)("Like the notes at issue here, the contract at issue in Reyes was silent on revocation… [e]ven so, the Second Circuit determined that the plaintiff's bargained-for consent 'bec[a]me irrevocable' when it was granted in the contract"); cf *Ammons v. Ally Financial, Inc*., No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018)("there is no contractual provision that addresses, let alone restricts, revocation.")

Claimant will rely heavily on *Ammons v. Ally Financial, Inc*., No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) and ask the Arbitrator to disregard black letter law regarding the impact of contractual consent provisions. But *Ammons* overreaches, as the Court in *Medley* explained:

> However, this Court concludes that the distinctions in *Patterson* and *Welch* are not clearly addressed in *Ammons*, and declines to read *Osorio* as broadly as the *Ammons* Court. Additionally, although the Court in *ACA International* notes that the FCC explicitly denied the request that "callers [be able to] unilaterally prescribe the exclusive means for consumers to revoke their consent," because such a rule "could materially impair the right of revocation," 885 F.3d at 709 (internal quotations omitted), the decision does not explicitly address the scenario in which the parties have bargained for prior express consent. Indeed, the decision recognizes that the FCC had not ruled on "parties' ability to agree upon revocation procedures." Id. at 710. Thus, the Court finds that in the absence of a statement by Congress that the TCPA alters the common-law notion that consent cannot be unilaterally revoked where given as part of a bargained-for contract, the Court will decline to do so.

*Medley* at * 35.

Most basically, *Ammons* fails to recognize the distinction between consent that is

gratuitously granted and consent that is bargained for and provided as part of a contract. Although the TCPA requires prior express consent to use an ATDS, it is completely silent on revocation.[17] Several circuit courts and the FCC have ruled that when a consumer has given his consent *unilaterally*, consent to be contacted can later be unilaterally revoked.[18] That is not the issue here. The issue here is whether the TCPA permits a consumer to unilaterally revoke consent when consent is part of the bargained-for consideration in a *bilateral* contract.[19]  And as *ACA Int'l* makes clear, that issue was not addressed by the FCC's Omnibus ruling. *ACA Int'l*, 885 F.3d at 710 ("The ruling precludes unilateral imposition of revocation rules by callers; it does not address revocation rules mutually adopted by contracting parties.")

*Ammons* overlooks that "[i]t is black-letter law that one party may not alter a bilateral contract by revoking a term without the consent of the counterparty."[20]  But "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."[21] The TCPA does not address revocation of consent.  Claimant's consent was provided in an express provision of his contract,[22] and "[u]nder such circumstances, 'consent,' as that term is used in the TCPA, is not revocable."[23]

The facts in this case are analogous to those in *Reyes*.  The *Reyes* plaintiff and Claimant both entered into contracts to finance goods, consented in the contract to be called, defaulted on their accounts, were called on the numbers they provided after default, alleged that they had orally and unilaterally revoked their consent to be called, and brought TCPA claims seeking statutory damages.[24]

---

[17] 47 U.S.C. § 227; *Reyes*, 861 F.3d at 56.
[18] *See Orsario v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (telephone number was provided in an insurance application, not a bilateral contract); *see also Gager v. Dell Financial Services*, 727 F.3d 265, 268 (3rd Cir. 2013) (telephone number was provided in a credit application, not a bilateral contract).
[19] *See Reyes*, 861 F.3d at 56.
[20] *Id.* at 57 (citing Restatement (Second) of Contracts § 287 cmt. a).
[21] *United States v. Texas*, 507 U.S. 519, 534 (1993).
[22] Ex. 1.
[23] *Reyes*, 861 F.3d at 57.
[24] *See* 47 U.S.C. § 227(b)(1)(A).

The provisions in the contract from *Reyes* and Claimant's contract are similar:

| Reyes Provision | Claimant's Contractual Provision |
| --- | --- |
| You [Reyes] also expressly consent and agree to Lessor [Ford], Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems.[25] | Consent to telephone/text message/email contact: For each telephone number you provide to seller (either directly or by placing a call to us), you consent and authorize us to place telephone calls to you at that number. Such consent expressly includes authorization for seller (and/or our affiliates and/or agents) to send text messages and/or place telephone calls to cellular or landline telephone numbers using pre-recorded or artificial voice messages, as well as calls made by an automatic dialing system[26] |

As *Reyes* and *Medley* demonstrate, Ms. Davis provided irrevocable consent by agreeing to the terms of the RISCA.[27] Conn's acknowledges that the Arbitrator previously refused to apply *Reyes* at the summary judgment stage, but the Arbitrator should re-consider that determination and now rule in Conn's favor on this issue, as numerous other arbitrators have already done. *Jeffrey Tagatz v. Conn Appliances, Inc.,* AAA Case No. 16-0003-9567 (April 16, 2018 Order) at ¶ 3 (granting Conn's summary judgment because "[u]nder the TCPA when a party provides consent contractually, that party cannot unilaterally revoke consent"); *Dexter Johnson v. Conn Appliances, Inc.,* AAA Case No. 16-0004-6529 (Feb. 21, 2018 Order) at ¶ 4 (summary judgment to Conn's because "[w]hen a party provides consent contractually as a part of a bargained for exchange, that

---

[25] *Reyes*, 861 F.3d at 53–54.
[26] Ex. 1.
[27] Although *Ammons* is a local case it does not purport to apply Tennessee law except for two basic propositions: i) a waiver is ineffective unless it is knowing and voluntary; and ii) vague terms are to be read against their drafters. *Ammons* at p. 29. These propositions are not relevant to the analysis as the clause is not vague and the consumer knowingly accepted the consent provision by signing the contract. Notably New York law—where *Reyes* was decided—applies these same principles. See *People v. Seaberg*, 74 NY 2d 1, 11 (NY Apps. 1989)("A waiver, to be enforceable, must not only be voluntary but also knowing and intelligent."); *Village of Ilion v. County of Herkimer*, 23 NY3d 812 (2014)( "It is well-settled that ambiguous terms in contracts are to be construed against the drafter, which, in this case, is the defendant.")

party cannot unilaterally revoke consent just like that party cannot unilaterally modify or revoke other terms of the contract"); *Rickey Dudley v. Conn Appliances, Inc.*, AAA Case No. 16-0004-7817 (Feb. 18, 2018 Order) at ¶ 3 (granting Conn's summary judgment because "[u]nder the TCPA when a party provides consent contractually, that party cannot unilaterally revoke consent"); *Donnell Webster v. Conn Appliances, Inc.* Case No. 16-0003-6774 (Aug 27, 2017 Order) at p. 3 ("The bi-lateral nature of contract does not allow one person to unilaterally revoke the contractual consent previously given"); *Vianne Jackson v. Conn Appliances, Inc.,* Case No. 16-0004-6562 (Nov. 14, 2017 Order) at ("[u]nder the TCPA a party is not able to revoke contractual consent unless the parties mutually modify the contract, Respondent waives that term, or Respondent releases Claimant from that term of the contract.")

### C. <u>Even Setting Aside the RISCA Claimant Did Not Clearly and Expressly Revoke Consent</u>

Consent can only be effectively revoked by way of a "clear expression" that messages should stop. 2015 FCC Order, 30 FCC Rcd. 7961, 8001, ¶ 63 (2015). "Express and clear revocation of consent [for TCPA purposes is required]; implicit revocation will not do". *In re Runyan*, 530 B.R. 801, 807 (M.D. Fla. 2015); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (called party must "clearly express desire not to receive further []messages"). Even in the absence of contractual language, non-specific "stop calling" requests that do not specify the phone number for which revocation was intended are insufficient to clearly revoke consent. *See Johnston v. USAA Fed. Sav. Bank*, No. 12-CV-02486-LTB-KLM, 2014 WL 5439965, at *2 (D. Colo. 2014); *see also Herrera v. First Nat'l Bank of Omaha* 2:17-cv-01136-RSWL-SKA, 2017 WL6001718 (question of fact on revocation existed when customer said "do not call my phone"); *and see Buchholz v. Valarity, LLC*, No. 4:13CV0362 TIA, 2015 WL 590381, at *2 (E.D. Mo. Feb. 11, 2015) (question of fact whether phrase "stop calling me" was sufficient to revoke consent since the caller did not identify himself on the call); *see also Self-Forbes v. Advanced Call Center Tech., LLC*, No. 2:16-CV-1088 JCM (PAL), 2017 U.S. Dist. LEXIS 55913, at *18-19 (D.

Nev. Apr. 12, 2017) (plaintiff's affidavit that "she spoke with a representative several times in January and revoked consent" did not create a genuine dispute of fact on the issue of revocation and granting summary judgment for the defendant).

The facts here demonstrate that Claimant did not clearly and expressly revoke her consent as required by law. Claimant will attempt to take certain statements out of context and otherwise cherry-pick portions of longer calls in an effort to meet her high burden of establishing clear revocation. But words like "I wish ya'll could just stop calling so much" or "this is harassment" do not come close to meeting her high standard of demonstrating a clear expression that calls should stop completely. Indeed, Conn's agents are trained to ask questions of customers who make such statements to better understand exactly what the request means; e.g. for calls to stop regarding a specific payment vs. a desire to never hear from Conn's again. Claimant never clearly expressed a desire for all calls from Conn's to cease permanently.

The weight of the evidence will not assist her and the Arbitrator must find that her vague statements are insufficient to establish revocation as a matter of law in this case.

## V.    CONCLUSION

For the reasons stated above, as well as those that will be presented during the arbitration hearing, Conn Appliances respectfully requests that the Arbitrator enter an award denying all relief demanded by Claimant.

/s/ Eric J. Troutman
Eric J. Troutman, Esq.
The Troutman Firm
Plaza Tower 1,
600 Anton Blvd., 11th Floor
Costa Mesa, California 92626
Email: Eric@TheTroutmanFirm.com

Attorneys for Respondent
CONN APPLIANCES, INC.